UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

```
-----------------------------X
                             :
UNITED STATES OF AMERICA,    :
                             :    12-CR-445 (DRH)(GRB)
        v.                   :
                             :    July 13, 2012
MERYL CARRION,               :
                             :    Central Islip, NY
            Defendant.       :
                             :
-----------------------------X
```

TRANSCRIPT OF CRIMINAL CAUSE FOR GUILTY PLEA
BEFORE THE HONORABLE GARY R. BROWN
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Government:          LORETTA LYNCH, ESQ.
                             UNITED STATES ATTORNEY
                             BY: CHRISTOPHER OTT, ESQ.
                             ASSISTANT U.S. ATTORNEY
                             271 Cadman Plaza East
                             Brooklyn, New York  11201


For the Defendant:           PATRICK BRODERICK, ESQ.




Audio Operator:


Court Transcriber:           ARIA SERVICES, INC.
                             c/o Elizabeth Barron
                             102 Sparrow Ridge Road
                             Carmel, NY 10512
                             (845) 260-1377



Proceedings recorded by electronic sound recording,
transcript produced by transcription service

```
 1              THE CLERK:  Calling 12-CR-446, United States
 2   of America v. Meryl Carrion.
 3              Please state your appearance for the record.
 4              MR. OTT:  Good morning, your Honor.
 5   Christopher Ott on behalf of the United States, joined
 6   at counsel table by Special Agent Ronnie Rosada Espinal
 7   (ph).
 8              THE COURT:  Good morning.
 9              MR. BRODERICK:  Good morning, your Honor.
10   Patrick Broderick appearing for Meryl Carrion, and
11   she's with me here this morning, your Honor.  Thank you
12   very much for taking us right now.  We really
13   appreciate it.
14              THE COURT:  No problem.  Very good, thank
15   you.  First of all, have we done a consent to plea
16   before a magistrate?
17              This matter has been referred to me by Judge
18   Hurley.  Understand you have the right to take the plea
19   in front of Judge Hurley if you prefer.  He's asked for
20   convenience purposes for me to take it.
21              Is there any objection to proceeding today
22   here?
23              MR. BRODERICK:  No, your Honor, none at all.
24              THE COURT:  I'll sign the order of referral
25   consent and mark it in the record.
```

1              The first thing we have to do, Ms. -- it's

2    Carrion?

3              THE DEFENDANT:  Carrion, yes, your Honor.

4              THE COURT:  You have the right to be charged

5    by a grand jury.  What that means is that the U.S.

6    attorney's office would have the right -- would have to

7    go before a grand jury and present a case.  A grand

8    jury, consisting of a group of citizens from the

9    community, would have to find that there was probable

10   cause to proceed against you.

11             If you want to proceed today on an

12   information, what you're doing is you're waiving that

13   right and letting the government present a charging

14   instrument without going before the grand jury.

15   Understand that if the grand jury considered it, they

16   might return an indictment, they might not.

17             Do you have any objection to proceeding in

18   that manner?

19             THE DEFENDANT:  No.

20             THE COURT:  Okay.  So you're going to waive

21   your right to an indictment and you want to proceed by

22   information; is that right?

23             THE DEFENDANT:  Yes.

24             THE COURT:  Very good.  I have here a form

25   here called a waiver of indictment.

1           And that's your signature on this, I think?

2    Yes?  You signed this waiver of indictment?

3           THE DEFENDANT:  I did, your Honor, yes.

4           THE COURT:  Very good.  I'll enter that as

5    well.

6           So, Ms. Carrion, before accepting a guilty

7    plea, there are a number of questions I must ask you,

8    to assure that it's a valid plea.  If you don't

9    understand any of my questions, please say so and I'll

10   reword or rephrase the question.

11          Counsel, any objection to putting your

12   client under oath?

13          MR. BRODERICK:  No, no objection, your

14   Honor.

15          THE COURT:  Could you administer the oath to

16   the defendant?

17          (Defendant is sworn.)

18          THE COURT:  Do you understand, Ms. Carrion,

19   that having been sworn, your answers to my questions

20   will be subject to the penalties of perjury or of

21   making a false statement if you do not answer

22   truthfully?

23          Do you understand that?

24          THE DEFENDANT:  Yes, sir.

25          THE COURT:  So understand that that's a

1  separate problem from what we're talking about today,

2  so we don't want to have that problem, okay?

3             THE DEFENDANT:  Yes.

4             THE COURT:  All right, good.  Just state

5  your full name for the record.

6             THE DEFENDANT:  Meryl Gayle Carrion.

7             THE COURT:  Very good.  How old are you, Ms.

8  Carrion?

9             THE DEFENDANT:  55.

10            THE COURT:  And how far did you go in

11  school?

12            THE DEFENDANT:  One year of college.

13            THE COURT:  Are you presently or have you

14  recently been under the care of a physician or

15  psychiatrist?

16            THE DEFENDANT:  No.

17            THE COURT:  In the past 24 hours, have you

18  taken any narcotic drugs, medicines or pills or drank -

19  - consumed any alcoholic beverages?

20            THE DEFENDANT:  I've taken medication.

21            THE COURT:  Okay.  What kind of medication

22  is that?

23            THE DEFENDANT:  I took anti-anxiety

24  medicine, Zoloft, and Benydril.

25            THE COURT:  Okay, when did you take that?

1                    THE DEFENDANT:  Last night.

2                    THE COURT:  All right.  Does that affect

3    your ability to understand or to think or to

4    communicate?

5                    THE DEFENDANT:  No, not at all, no.

6                    THE COURT:  Is your mind clear today?

7                    THE DEFENDANT:  Yes, it is.

8                    THE COURT:  And you understand what's going

9    on here?

10                   THE DEFENDANT:  I do.

11                   THE COURT:  Have you been hospitalized or

12   treated for narcotics addiction?

13                   THE DEFENDANT:  No.

14                   THE COURT:  Your mind is clear and you do

15   understand everything I've said so far.

16                   THE DEFENDANT:  Yes, I understand

17   everything, yes.

18                   THE COURT:  Counsel, have you discussed the

19   matter with your client?

20                   MR. BRODERICK:  Yes, I have, your Honor.

21                   THE COURT:  Does she understand that she

22   will be waiving by pleading guilty?

23                   MR. BRODERICK:  Yes, she has, your Honor.

24                   THE COURT:  Is she capable of understanding

25   the nature of these proceedings?

1          MR. BRODERICK:  Yes, she is.

2          THE COURT:  Do you have any doubt as to the

3     competency of the defendant to plead guilty?

4          MR. BRODERICK:  No doubt, your Honor.

5          THE COURT:  Ms. Carrion, I'm going to come

6     back to you.  You have the right to plead not guilty.

7          Do you understand that?

8          THE DEFENDANT:  I do.

9          THE COURT:  If you pled not guilty, under

10    the Constitution and laws of the United States, you're

11    entitled to a speedy and public trial by jury, with the

12    assistance of counsel, on the charges.

13         Do you understand that?

14         THE DEFENDANT:  Yes, I do, your Honor.

15         THE COURT:  At the trial, you would be

16    presumed to be innocent and the government would have

17    to overcome that presumption and prove you guilty by

18    competent evidence and beyond a reasonable doubt, and

19    you would not have to prove that you are innocent.  If

20    the government failed, the jury would have the duty to

21    find you not guilty.

22         Do you understand that?

23         THE DEFENDANT:  Yes.

24         THE COURT:  In the course of that trial,

25    witnesses for the government would have to come forward

1  to court and testify in your presence and in the

2  presence of your counsel, and your counsel would have

3  the right to cross-examine the witnesses for the

4  government and object to evidence offered by the

5  government, and to offer evidence on your behalf.

6           Do you understand all those things?

7           THE DEFENDANT:  Yes, I do.

8           THE COURT:  At the trial, while you would

9  have the right to testify if you chose to do so, you

10 would not be required to do so.  Under the Constitution

11 of the United States, you cannot be compelled to

12 incriminate yourself.  If you decided not to testify,

13 the Court would instruct the jury that they could not

14 hold that against you.

15          Do you understand that?

16          THE DEFENDANT:  Yes, sir.

17          THE COURT:  If you plead guilty and I

18 recommend acceptance of the plea to Judge Hurley, who

19 presumably would then accept the plea, you'll be giving

20 up your constitutional rights to a trial and the other

21 rights that I just described.

22          Do you understand that?

23          THE DEFENDANT:  Yes, I do.

24          THE COURT:  There will be no further trial

25 of any kind and no right to appeal or collaterally

```
 1   attack at any time the question of whether you're

 2   guilty or not.  A judgment of guilty will be entered on

 3   the basis of your guilty plea, which judgment can never

 4   be challenged.  However, you may have the right to

 5   appeal with respect to the sentence.

 6              Do you understand that?

 7              THE DEFENDANT:  Yes, I do.

 8              THE COURT:  What is the waiver of appeal in

 9   this case?  I'll come back to this in more detail but

10   is there an appellate waiver?

11              MR. OTT:  The waiver is six months, your

12   Honor.

13              THE COURT:  Meaning that?

14              MR. OTT:  If there's a sentence of six

15   months or below, the waiver of appeal --

16              THE COURT:  Right, but she would maintain

17   her right to appeal a sentence of more than six months.

18              MR. OTT:  That's right, six months and a day

19   and so on.

20              THE COURT:  Ms. Carrion, if you plead

21   guilty, I'll have to ask you questions about what you

22   did, in order to satisfy myself that you are guilty of

23   the charges to which you seek to plead guilty, and you

24   will have to answer those questions and acknowledge

25   your guilt.  Thus, you'll be giving up your right not
```

1  to incriminate yourself.

2          Do you understand that?

3          THE DEFENDANT:  Yes, I do.

4          THE COURT:  Are you willing to give up your

5  right to a trial and the other rights that I just

6  discussed?

7          THE DEFENDANT:  Yes, I am.

8          THE COURT:  I'm going to ask the government

9  attorney to summarize the plea agreement, please.

10          MR. OTT:  Yes, your Honor.  The agreement is

11  that the defendant will waive indictment and plead

12  guilty to the three counts contained in the

13  information, which have to do with the evasion of taxes

14  in the calendar years 2006, 2007 and 2008.  In exchange

15  for that, all of the tax conduct for those years, the

16  government will not pursue.  Also, the government will

17  not make a recommendation for upward departure or any

18  specific sentencing recommendation, other than to

19  concur that a guideline sentence, which we anticipate

20  will be zero to six months, should be imposed.

21          THE COURT:  Very good.

22          Do you understand that to be the agreement

23  with the government?

24          THE DEFENDANT:  Yes, I do, sir.

25          THE COURT:  Counsel, would you also just

1   summarize the elements of the crime with which she's

2   been charged?

3              MR. OTT:  Certainly, your Honor.  The

4   elements are that there's an affirmative act

5   constituting an attempt to evade or defeat the tax or

6   payment thereof.  This is, by the way, Title 26, United

7   States Code 7201.

8              The second main element is additional tax

9   due and owing.

10             The third is wilfulness, which is to say

11  that she -- the defendant knew that there was

12  additional tax due or owing and that she was making an

13  attempt to evade or defeat that.

14             The final element, which is sort of a

15  pseudo-element, is that by a preponderance of the

16  evidence, some of the acts occurred in the Eastern

17  District of New York.

18             THE COURT:  Okay.

19             Ms. Carrion, do you understand those to be

20  the elements of the crime with which you are charged?

21             THE DEFENDANT:  Yes, your Honor, I do.

22             THE COURT:  The reason that's important is,

23  that's what the government would have to prove had you

24  gone to trial.

25             Do you understand that?

```
 1                    THE DEFENDANT:  I do.

 2                    THE COURT:  Have you discussed with your

 3      attorney the charges in the information to which you

 4      intend to plead guilty?

 5                    THE DEFENDANT:  Yes, I have.

 6                    THE COURT:  You understand those charge?

 7                    THE DEFENDANT:  I do, your Honor.

 8                    THE COURT:  Do you need any more time to

 9      talk with your counsel about that fact or anything else

10      we talked about today?  Do you need more time?

11                    THE DEFENDANT:  No.  We talked about

12      everything.

13                    MR. BRODERICK:  Yes, we have.

14                    THE DEFENDANT:  Yes.

15                    THE COURT:  And you've had adequate time to

16      review everything.

17                    THE DEFENDANT:  Yes.

18                    THE COURT:  Do you understand the maximum

19      sentence and fine that Judge Hurley might impose in

20      this case?

21                    THE DEFENDANT:  Yes, I do.

22                    THE COURT:  So you know then that the

23      maximum term of imprisonment is five years --

24                    Is it five years for each count or five

25      years?
```

1            MR. OTT:  It's five years per count, yes.

2            THE COURT:  Each count, okay.  Whether that

3  would be consecutive or not is the question, so it's

4  theoretically fifteen years for all three counts, the

5  maximum.

6            Do you understand that?

7            THE DEFENDANT:  Yes.

8            THE COURT:  There's no minimum term of

9  imprisonment.  There's something called a supervised

10  release term, which is three years, which would follow

11  any term of imprisonment.  What that is -- that's a

12  kind of probation.

13            Are you familiar with that?

14            THE DEFENDANT:  Yes.

15            THE COURT:  If you violated the terms of

16  supervised release, you could be sentenced for up to

17  another two years, without any credit for anything else

18  that happened in the past.

19            Do you understand that?

20            THE DEFENDANT:  Yes.

21            THE COURT:  You understand there's a maximum

22  fine of $100,000.

23            I'm presuming that's per count?

24            MR. OTT:  Yes, your Honor.

25            THE COURT:  Okay.  So there's a maximum fine

1    potentially of up to $300,000.

2              Ms. Carrion, are you with me?

3              THE DEFENDANT:  Yes, I am, I am.

4              THE COURT:  Understand, I have to go through

5    this, ma'am.

6              THE DEFENDANT:  I understand, yes.

7              THE COURT:  You have to understand

8    everything that's possible, all right?

9              THE DEFENDANT:  I understand.

10             THE COURT:  Restaurant I believe has to be

11   ordered, in an amount that's going to be determined

12   later.  I'm not quite sure how we're going to do that,

13   but you understand restitution, meaning pay back what

14   you owe.

15             THE DEFENDANT:  Yes, I do, completely.

16             THE COURT:  And there's a $100 special

17   assessment which has to be paid.

18             And the cost of prosecution, Mr. Ott, is

19   that right?

20             MR. OTT:  Yes, that's by statute, but we

21   don't anticipate asking for the costs of prosecution.

22             THE COURT:  So it's $100 special assessment

23   per count, I believe --

24             THE DEFENDANT:  Okay.

25             THE COURT:  -- that you're pleading to, so

1    that's $300 you'd have to pay.

2            Do you understand that?

3            THE DEFENDANT:  Yes, I do.

4            THE COURT:  Has your attorney spoken to you

5    about something called the sentencing guidelines?

6            THE DEFENDANT:  Yes, he has.

7            THE COURT:  Okay.  So you understand that

8    although they're not mandatory, meaning that the Court

9    doesn't have to follow them, the Court has to consider

10   them in sentencing you.

11           Do you understand that?

12           THE DEFENDANT:  Yes, I do.

13           THE COURT:  The guideline range has been

14   estimated -- it's a base offense level of 10.

15           Mr. Ott, unless this is --

16           MR. BRODERICK:  It's page 3, your Honor, on

17   top of the page there.

18           MR. OTT:  It's zero to six months, your

19   Honor.

20           THE COURT:  Right, right, but it's a base of

21   10 and there are no other adjustments, is that right?

22           MR. OTT:  That's right.

23           THE COURT:  Okay.

24           So there's an estimate which -- understand,

25   the estimate is just everyone's best shot at this,

1    right?  The Court is not bound by it but there's an

2    estimate that the guidelines is going to say zero to

3    six months.

4              THE DEFENDANT:  I do.

5              THE COURT:  You understand that.  And Judge

6    Hurley would have to consider that.  But, again, he's

7    not bound by it.  He can go higher, he theoretically

8    could go lower, but zero to six months is really --

9              THE DEFENDANT:  I understand.

10             THE COURT:  You understand that the district

11   court must take a number of factors into account in

12   determining the appropriate guideline range, including

13   the nature and circumstances of the offense, the

14   history and characteristics of the defendant, that's

15   you, the seriousness of the offense, the victims of the

16   offense and your acceptance of responsibility.

17             You understand all that, correct?

18             THE DEFENDANT:  Yes, I do.

19             THE COURT:  Based on that, Judge Hurley will

20   make his own guidelines calculation as well.

21             Do you understand that?

22             THE DEFENDANT:  Yes, I do.

23             THE COURT:  You understand that the

24   estimates are not binding on the Court at all.

25             THE DEFENDANT:  Yes, I understand.

1          THE COURT:  You also realize that if the

2   sentence is more severe than what you expect, you will

3   be bound by your guilty plea and you will not be

4   permitted to withdraw it.

5          THE DEFENDANT:  I do understand.

6          THE COURT:  Do you have any questions about

7   the charges, your rights or anything else relating to

8   this matter before we proceed to --

9          THE DEFENDANT:  No, sir.

10          THE COURT:  So you're ready to plead?

11          THE DEFENDANT:  I am, your Honor.

12          THE COURT:  Counsel, do you know of any

13   legal reason why the defendant should not plead guilty?

14          MR. BRODERICK:  No, I know no reason.

15          THE COURT:  Ms. Carrion, are you satisfied

16   with your legal representation up to this point?

17          THE DEFENDANT:  Yes, I am.

18          THE COURT:  What is your plea?

19          THE DEFENDANT:  My plea is guilty, your

20   Honor.

21          THE COURT:  Are you making this plea of

22   guilty voluntarily and of your own free will?

23          THE DEFENDANT:  Yes, I am.

24          THE COURT:  Has anyone threatened or forced

25   you to plead guilty?

1          THE DEFENDANT:  No, sir.

2          THE COURT:  Other than the agreement with

3   the government as stated on the record, has anyone made

4   any promises that caused you to plead guilty?

5          THE DEFENDANT:  No.

6          THE COURT:  Has anyone made any promise to

7   you as to what your sentence will be?  Again, we're not

8   talking about the estimates.  Has anyone promised you,

9   it's going to be this?

10          THE DEFENDANT:  No.

11          THE COURT:  Did you, as charged in the

12   information, in or around April 15th of 2007, 2008 and

13   2009, knowingly and willingly attempt to evade and

14   defeat substantial income tax due and owing to the

15   United States of America?  Did you do that?

16          THE DEFENDANT:  Yes, sir.

17          THE COURT:  All right.  You did that by

18   filing and causing to be filed with the Internal

19   Revenue Service false and fraudulent United States 1040

20   forms?

21          THE DEFENDANT:  Yes, sir.

22          THE COURT:  Tell me in your own words what

23   you did.

24          THE DEFENDANT:  For the three years, I did

25   not report the accurate amount of income that I made to

```
1   the IRS on my taxes.

2              THE COURT:  Okay.  How so?

3              THE DEFENDANT:  I reported less than I was

4   actually taking in for income.

5              THE COURT:  Okay.  How much less?

6              THE DEFENDANT:  It was about approximately

7   $11,000.

8              THE COURT:  All total for the three years?

9              THE DEFENDANT:  Yes.

10             THE COURT:  Did you do that -- where were

11  you when you did that?

12             THE DEFENDANT:  Where was I?

13             THE COURT:  In other words --

14             THE DEFENDANT:  While I was working for

15  Apple Builders Corporation.

16             THE COURT:  Is that on Long Island?

17             THE DEFENDANT:  No, it's in Queens.

18             THE COURT:  Okay, so it was in Queens.

19             THE DEFENDANT:  Oh, that's Long Island,

20  okay.

21             THE COURT:  Where did you live at the time?

22             THE DEFENDANT:  In Queens.

23             THE COURT:  In Queens, okay.

24             Where did you mail the returns to, if I

25  remember?
```

```
1                THE DEFENDANT:  I'm sorry?

2                THE COURT:  Where did you mail the returns

3    to, do you remember?

4                THE DEFENDANT:  Whatever the address is,

5    Holtsville.

6                THE COURT:  I was just trying to establish

7    that it happened here.

8                THE DEFENDANT:  Yeah.

9                THE COURT:  Mr. Ott, correct me if I'm wrong

10   but I think the Queens employment is sufficient for

11   nexus to this district.

12               MR. OTT:  For the Eastern District, that's

13   correct.

14               THE COURT:  I recognize Queens is in the

15   Eastern District.  I just wanted to make sure that the

16   employer -- employment and residence was a sufficient

17   nexus for --

18               MR. OTT:  It is, your Honor.

19               THE COURT:  Okay.  So why don't you outline

20   the government's proof, should this have proceeded to

21   trial?

22               MR. OTT:  That's right, your Honor.  Through

23   bank records and also testimony, we would outline what

24   Ms. Carrion actually earned during those years.  We

25   would also endeavor to show the tax returns and show
```

1   that the numbers reported there don't match up to the

2   actual income coming in.  Through that, we would show

3   that she wilfully misreported her income.

4            THE COURT:  You raised another good

5   question.

6            Ms. Carrion, I want to double check.  When

7   you filed those false -- those tax returns that were

8   incorrect, did you know at the time you were filing

9   them that they were wrong?

10           THE DEFENDANT:  I did, your Honor.

11           THE COURT:  Okay.  And your reason for doing

12  that was to not pay the taxes, is that fair?

13           THE DEFENDANT:  That would be fair, yes,

14  sir.

15           THE COURT:  Is there something else?

16           THE DEFENDANT:  No, no.

17           THE COURT:  Okay.

18           THE DEFENDANT:  No, sir.

19           THE COURT:  Based on the information

20  provided to me, I find that the defendant is acting

21  voluntarily, fully understands her rights and the

22  consequences of her plea, and that there is a factual

23  basis for the plea.  I therefore recommend that Judge

24  Hurley accept the plea of guilty to Counts 1 through 3

25  of the information.

1          Mr. Ott, how are we doing as to bail

2    arrangements?

3          MR. OTT:  Your Honor, we've reached an

4    agreement for a personal recognizance bond for Ms.

5    Carrion.  Other than the standard restrictions, the

6    government and defense don't feel that any other

7    restrictions are necessary.

8          THE COURT:  Okay.

9          So, Ms. Carrion, we're talking about your

10   release, meaning remaining out of prison pending

11   sentencing, right?

12         THE DEFENDANT:  Yes.

13         THE COURT:  I've been handed a personal

14   recognizance bond, which is this document, which I

15   believe also has your signature.  I don't know if you

16   can see from there.

17         THE DEFENDANT:  Yes.  Yes, I did sign it.

18         THE COURT:  The only restrictions here of

19   note that I see -- well, there are a number of

20   restrictions in here but the one that I should discuss

21   with you is, do you have a passport?

22         THE DEFENDANT:  I do.

23         THE COURT:  Okay.  You're to surrender that

24   by July 27th.

25         THE DEFENDANT:  Okay.

1                THE COURT:  And you're not to apply for any

2   additional passports.  You understand that, right?

3                THE DEFENDANT:  Mm-hmm.

4                THE COURT:  The other important thing about

5   being out on bond is that you show up for court when

6   your lawyer tells you to, okay.

7                THE DEFENDANT:  Absolutely, yes.

8                THE COURT:  It's very important.  Failure to

9   do so is a separate crime called bail jumping.  Mr. Ott

10  gets a very easy job because the proof is easy, you're

11  just not here, that's it.  So let's not cause any other

12  problems.  Make sure you stay in touch with your

13  lawyer.

14               THE DEFENDANT:  I will.

15               THE COURT:  Work with Pretrial Services or

16  Probation, whatever they need.  Just be where you're

17  supposed to be when you're supposed to be, okay?

18               THE DEFENDANT:  I will, your Honor.

19               THE COURT:  With that, I'm going to sign the

20  personal recognizance bond and date it today, which is

21  the 13th.  Very good.

22               Anything else I need to do?  Let me start

23  with the government.

24               MR. OTT:  I don't think so, your Honor, no.

25               THE COURT:  Anything else I can do for the

1   defendant today?

2           MR. BRODERICK:  No, your Honor.

3           THE DEFENDANT:  No, thank you, your Honor.

4           THE COURT:  All right, we're adjourned.

5           MR. OTT:  Thank you.

6           MR. BRODERICK:  Your Honor, I think they're

7   supposed to report to Probation today, though?  Is that

8   what she should do?

9           THE COURT:  Mr. Ott would know better than

10  I.

11          MR. BRODERICK:  Thank you, your Honor, for

12  taking us again today.  We really do appreciate this.

13          THE COURT:  No problem.

14          THE DEFENDANT:  Thank you, your Honor.

15          THE COURT:  Happy to help.  Good luck.

16          THE DEFENDANT:  Thank you, sir.

17          (Tape off, tape on.)

18          MR. BRODERICK:  Your Honor, I think we had a

19  conference at the bar and the Court wanted to ask one

20  more question.

21          THE COURT:  Yeah, I just want to ask one

22  more question, ma'am.  Step up to the mic, if you

23  would.  Just right there.  Have a seat, relax.  It's

24  not a problem.  I might have mis-head you, I'm just not

25  sure.

```
1              When you said to me that you had mis-
2    reported your taxes by $11,000, you were referring to
3    the amount of tax due, is that right?
4              THE DEFENDANT:  Yes, sir.
5              THE COURT:  Okay, as compared to the amount
6    of income due, which was actually a larger -- that was
7    a larger number, right?
8              THE DEFENDANT:  Yes, sir.
9              THE COURT:  I'm looking at this and it looks
10   more like -- it's a significantly larger number of
11   income, right?  Is that fair?
12             THE DEFENDANT:  It is.  The income is more.
13             THE COURT:  The gross income.
14             THE DEFENDANT:  Yes, sir.
15             THE COURT:  All right, that was my -- I
16   didn't --
17             THE DEFENDANT:  No, I understand.
18             THE COURT:  I wasn't sure, so thank you.
19             THE DEFENDANT:  Okay, you're welcome.  Thank
20   you, sir.
21                  * * * * * * * *
22
23
24
25
```

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18      I certify that the foregoing is a correct

19  transcript from the electronic sound recording of the

20  proceedings in the above-entitled matter.

21

22

23

24

25  ELIZABETH BARRON                    August 22, 2012